Camjthers, J.,
delivered the opinion of the Court.
The defendant is the owner of a large body of land constituting what is called “ Robertson’s Bend,” on Cumberland river, a few miles below Nashville. The tract consists of various grants of different sizes and numbers, to General James Robertson, dated before the year 1800, from whom the title is derived, passing through various persons to the defendant. That these grants covered the whole Bend, does not seem to have been questioned until 1856, when the plaintiff, ascertaining, as he supposed, that some two or three of these grants did not fit up to each other, but left a strip between them that was still vacant, made an entry upon it for 400 acres. In 1857 he obtained a grant from the State for 200 acres, and instituted this action of ejectment on the 5th day of April, 1859.
The plaintiff failed below, and brings up the case, by appeal in error, for a new trial.
The main ground relied upon for a new trial is, that part of the charge in relation to the character of possession necessary to raise the presumption of a grant in favor of Coekrill for the small slip of land that may not be covered by the *434 original grants, and falls witliin the younger grant of the plaintiff.
The Judge said to the jury on that point, “ That after twenty years of continuous, unbroken, adverse possession of land, the law presumed a grant to have issued from the State, and the possessor acquired thereby an absolute, indefeasible title. That this possession might be held by one individual, or, by a succession of persons, and in the latter case, it was sufficient if the several possessions when added together, completed the term of twenty years, provided there was no interruption, no hiatus, no intervening time that the land was not adversely possessed by one, or another of the several possessors, and that to connect the several possessions, it was unnecessary that there should he any written or verbal assignment or transfer from a prior to a subsequent possessor, but that it was sufficient if the several possessions united in fact, so as to make the possession continuous and uninterrupted from the commencement to the end of the twenty years.” He further said, that “ The possession must be adverse, that is, under a claim of right, as against the State That is, that the persons in possession must claim to be owners of the land, or tenants of the owner.
The objection to the charge is supported by a very plausible argument. It is, that successive possessions cannot be united to make out the twenty years necessary to raise the presumption of a grant, unless there is some transfer, or assignment, or descent by Avhicli they are connected. In other words, the argument is, that in order to raise the presumption of a grant where the possessions of several persons must be united to make out the term of years required, they must all be made one, in law, by some privity between them, or the same claim of the land must pass from one to the others by some mode recognized by the law as valid, in the transfer of land.
The charge states the doctrine very broadly; more so, perhaps, than any case ave have in our OAvn reports. In Chilton v. Wilson’s heirs, 9 Hum., 492, there were three, if not four, possessions to be united to make out the term. But they *435 were all connected by sales and conveyances, and descent. Yet in that case it is not made a question whether written, or verbal transfers from one to the others were necessary. The Court barely hold, that the different possessions may be united, and the presumption of the grant is in favor of the last possession. In Cannon v. Phillips, 2 Sneed, 214, the principle laid down is, that possession alone is evidence of title, and that its continuance for twenty years without any aid from what is called “ color of title,” raises a conclusive presumption that it had a legal origin — that is, that it originated by grant from the State. This presumption is arbitrary, to be sure, but it is none the less a fixed and settled rule, founded on the highest public policy, designed to quiet titles and protect occupants of land from molestation. That case places the doctrine entirely upon the continuous use and enjoyment of land for the prescribed time, without regard to the number of persons, or the connection between them.
This particular phase of the question does not seem to have been presented in any of our cases; but we think the true principle is, that, without reference to the manner in -which the respective possessions are connected or succeed each other, if they are continued and connected in fact, without any hiatus for twenty years, each claiming the ownership in connection with his possession, without regard to the source from which each claims to have derived his title, the presumption will arise, that the State has parted with her right by grant. Consequently, any subsequent grant of the same land would be a nullity, and confer no right upon the grantee. What reason is there, to require writings, or even verbal transfers, when the whole doctrine rests upon presumptions in the absence of writings, and its sole object is to supply them for the quiet and repose of society. The law has very wisely fortified the quiet, unsuspecting cultivator of the soil by this and other barriers, against the shrewd, prying speculator, who cares not who is disquieted, or suffers loss, so that he can make gain. Such adventurers must stand upon their strict legal rights, and expect nothing more. But it might be fur *436 ther said, that if such intermediate conveyances or transfers were necessary, they would also he presumed.
To these conclusions we had arrived upon the reason of the case, without any express authority upon the precise point under consideration. But we find that it has been expressly decided in North Carolina, in Chandler v. Lunsford, 4 Dev. & Bat. Law R., 409. The Court there held, upon the authority of an older case, of Fitzrandolph v. Norman, “ that the presumption of a grant arises, although the occupation had been by different persons, and no privity could, by any means, he traced between the successive tenants; much less is it requisite to establish such privity by deed.”
There can be no doubt then of the correctness of the charge on this point.
2. It is objected that the possession of this disputed tract was not of such a character as to authorize the presumption of a grant. It is true, that actual or constructive possession is essential. The title by presumption would only extend to the land in actual possession or occupation, and used for agricultural or other purposes. The extent of this possession ¡must be marked by actual use, or by some artificial or natural •enclosures. To extend the title by presumption beyond this, there must be some paper designating the boundaries claimed, and then by construction the actual possession of part would be enlarged to the limits prescribed by such paper. In this case there was no paper title perhaps to the slip of land in dispute, as the grants did not join each other, and the defendant must rely upon actual possession. It is said on the part of the plaintiff that this actual possession did not, in fact, exist. This is a controverted question of fact, and there is proof on both sides. The jury has decided it for the defendant, and the verdict must stand, unless there is error in the instructions of the Court in relation to it. It appears in the proof that the whole bend was used for the raising of stock, by pasturage; but some parts of it were cultivated. At the neck of the bend a fence was thrown across from the proximate shores of the river, at no great distance apart, at that *437 point. Around the bend at some points there weie fences, and at others the bank was adopted as the enclosure, so that the stock could have free access to the water. In reference to this state of facts the Court said :
“It is immaterial' as to the architecture of the enclosure, or the material of which it is made. It may be a wall, a ditch, a fence, or a hedge, or it may be some natural barrier, as a river, a bluff, ocean or lake, provided the arrangements and improvements made by him evince an intention to appropriate the natural barrier as the boundary, as one of the boundaries of his possession.”
To this we think there is no exceptions. It is a correct exposition of the law on that subject, in reference to the facts proved. It is true, that the fences were sometimes down, and people, as well as stock, passed in and out. But that would not interrupt or break the possession, if it were still used, and occupied, by the possessors for agricultural purposes, either by cultivation or stock-raising. The jury have found that the whole bend has been in actual possession for the term required to raise a presumption of a grant for any vacant land not covered by the grants, and that of course embraces the portion claimed by the plaintiff, and perfects the title of the defendant for the whole.
This being so, it becomes unnecessary to notice the other point discussed, in relation to the invalidity of the plaintiff’s entry and grant, for want of the thirty days’ notice to the defendant of the intention of the plaintiff to make the entry.
It follows that the judgment must be affirmed.